UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IDA JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:09-cv-1374-G |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on July 22, 2009. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On February 2, 2006, plaintiff Ida Marie Johnson (hereinafter "Plaintiff" or "Johnson") filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging a disability onset date of December 11, 2003. (Administrative Record (hereinafter "Tr." at 14, 114-125). Johnson last met the insured status requirements on December 31, 2008, therefore she must establish disability on or before that date in order to be entitled to a period of disability insurance benefits. (Tr. 14). She alleged disability due to arthritis, obesity, diabetes, and back pain. (Tr. 148). Her claim was denied by the state agency initially and on reconsideration, after which she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 14). A hearing was held before the ALJ on September 29, 2008, at which Plaintiff appeared with counsel and testified on her own behalf. (Tr. 23-46).

The ALJ also received the testimony of vocational expert ("VE") Joyce R. Shupe (Tr. 40-45). On November 26, 2008, the ALJ denied Plaintiff's request for benefits. (Tr. 14-22).

Plaintiff timely requested a review of the ALJ's decision by the Appeals Council, and on June 7, 2009, the Appeals Council denied her request for review. (Tr. 1-4). Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002). Plaintiff filed her federal complaint on July 22, 2009. Defendant filed an answer on October 1, 2009. On November 30, 2009, Plaintiff filed her brief, followed by Defendant's brief on March 1, 2010, and Plaintiff's reply on March 16, 2010.

Standard of Review - Social Security Claims: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Villa*, 895 F. 2d at 1022 (citations omitted). Where the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 461(5th Cir. 2005).

Discussion:   To prevail on a claim for disability insurance benefits, a claimant bears the

burden of establishing that she is disabled, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505, 416.905(a).  Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920.  Under the first four steps, a claimant has the burden of proving that her disability prevents her from performing her past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform. *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).  This burden may be satisfied by expert vocational testimony or other similar evidence. *See*, *e.g.*, *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  "A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the present case, the ALJ proceeded to step five.  He found that Johnson had not engaged in substantial gainful activity since December 11, 2003, the alleged onset date, although she had an unsuccessful work attempt from July 2006 through September 2006 with United Parcel Service (UPS). (Tr. 16).  He found her to have a combination of severe impairments, to wit: "obesity, diabetes mellitus, hypertension, degenerative disc disease, BIF [borderline intellectual functioning], and depression", but that the combination of her impairments did not

3

meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 16-17).

The ALJ found that Johnson retained the residual functional capacity ("RFC") to wit: "to perform light work ... which includes lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; sitting up to 6 hours in an 8 hour day; standing or walking up to 2 hours in an 8 hour day due to obesity; with no ability to climb ladders or ropes; and only occasional ability to use ramps and stairs, stoop, kneel, crouch or crawl.  Further, the claimant has the ability to understand, remember and follow simple 1, 2, 3 step instructions and complete repetitive tasks [Tr. 516-527] and must avoid contact with the public [Tr.516-527]."  (Tr. 17-18).  He found that Johnson was incapable of performing her past relevant work as a factory laborer, school custodian, or nursing aid, (Tr. 21), but that jobs exist in significant numbers in the local and national economy that Johnson could perform, citing the representative occupations of "assembly" with 3,700 sedentary jobs in Texas and 58,000 nationwide; "stuffer blower" with 3,000 sedentary jobs in Texas and 36,000 nationwide; inspector, with 1,100 sedentary jobs in Texas and 13,000 nationwide; and Johnson's past relevant work as a "Wal-Mart greeter", even if confined to a wheel chair.  (Tr. 22).  The ALJ therefore denied Johnson's request for disability benefits.

Johnson raises three arguments on appeal.  First, she argues that the ALJ failed to give adequate weight to treating source opinions.  Second, she argues that the ALJ's credibility analysis is not supported by substantial evidence.  Third, she argues that the ALJ's RFC finding is not supported by substantial evidence.

Medical History: Johnson's alleged disability onset date is December 11, 2003. (Tr. 14). Her obesity was first noted in records from 1999, (Tr. 326), and is present in her medical records from that point onward. (*See, e.g.*, Tr. 265, 267, 270, 300, 304, 572). As of April 11, 2003, she weighed 265 pounds, (Tr. 253), and her weight was 313 pounds by December 21, 2005. (Tr. 268). During the entire period, her doctors continually recommended that she follow a low-calorie diet and increase her daily physical activity. (*See, e.g.*, Tr. 270, 313, 438, 574, 579, 580, 592, 671, 676). At the hearing, Johnson acknowledged the advice of her doctors and admitted that she had not followed the advice and that eating was "a hobby". (Tr. 31-32, 37-38).

In September 2002, Johnson reported pain while standing, progressively worsening over the past year and a half, to her foot and ankle specialist, Dr. David D. Minchey, DPM.[1] (Tr. 479). Dr. Minchey noted edema in her ankle and assessed osteoarthritis and symptomatic pes valgus.[2] *Id*. On May 4, 2005, Dr. Carlos Reyes stated that Johnson had a less-than-sedentary exertional capacity due to her lumbar radiculopathy and diabetes mellitus, and that her disability was permanent. (Tr. 228-229).

Degenerative disc disease and lumbar radiculopathy were noted in the results of a July 7, 2005 MRI conducted by Dr. Michael S. Hartman, M.D. (Tr. 230). On August 4, 2005, Dr. Hassan Farooq, M.D. noted arthralgia[3] and extreme pitting edema. (Tr. 231-232). In discussing the arthralgia, the doctor noted that Johnson had difficulty with her gait caused more by her

---

[1] "DPM" is the abbreviation for Doctor of Podiatric Medicine.

[2] "Pes valgus" is the term for the condition commonly known as "flat feet", caused by the foot deviating outward at the talocalcanean joint. *See* http://medical-dictionary.thefreedictionary. com/pes+valgus.

[3] Arthralgia: Pain in one or more joints. Merriam-Webster's Free Medical Dictionary, http://www.merriam-webster.com/medical/arthralgia.

5

obesity than by the arthralgia. (Tr. 232). X-rays of Johnson's chest and of her thoracic spine on August 10, 2005 were both normal. (Tr. 233-235, 245-246).

An assessment of ability to do work-related activities checklist completed by Dr. Carlos Reyes-Pescador, M.D. on December 12, 2005, noted RFC limitations caused by morbid obesity and severe osteoarthritis, to include limitations on lifting / carrying up to 5 pounds occasionally or frequently; standing / walking at least 2 hours in an 8 hour day; sitting less than 6 hours in an 8 hour day; never climbing, balancing, stooping, crouching, kneeling, or crawling; and reduced reaching, handling, and pushing / pulling. (Tr. 238-239). A physical capacities evaluation checklist-style form completed by Dr. Kaneez Khan, M.D. on June 13, 2006, suggested that Johnson be limited to occasional lifting of 5 pounds, stated she cannot use her feet for repetitive pushing or pulling, noted restrictions as to marked changes in temperature and humidity and moderate restrictions regarding exposure to dust, fumes, and gases. (Tr. 632-633). Overall Dr. Khan assessed that Johnson's pain was "moderate", in that it "[c]ould be tolerated but would cause marked hardship in the performance of the activity which precipitates the pain; would restrict ability to maintain concentration." *Id*.

Osteoarthritis, arthralgia and edema are noted throughout records from 2006 through 2008. (*See, e.g.*, Tr. 300, 328-39, 514). Disc disease and chronic lumbar pain are noted repeatedly in the medical records from 2006 through 2008. (*See, e.g.*, Tr. 300, 467, 472, 540, 574). Diabetes mellitus and hypertension are also noted repeatedly from 2006 through 2008. (*See, e.g.*, Tr. 300, 328-329, 467, 472). In August 2007, Johnson's diabetes was under control when she was taking her medication as prescribed. (Tr. 437). On August 15, 2007, x-rays of Johnson's right knee and foot were normal. (Tr. 421-424).

6

On April 25, 2008, Dr. Ronald J. Peron, M.D. noted that Johnson had difficulty ambulating and needed her scooter to move around. (Tr. 574). On June 20, 2008, x-rays of Johnson's right knee were normal. (Tr. 555). On August 28, 2008, Dr. Minchey discussed diabetic neuropathy with Johnson, recommended that she get "diabetic shoes", and offered them to her at a discount since her insurance would not cover them. (Tr. 627). While she was diagnosed with diabetic neuropathy, Dr. Minchey's treatment notes from examinations on October 4, 2007, April 17, 2008, and August 28, 2008 indicate that there was no evidence of deep or superficial venous insufficiency. (Tr. 478, 627, 629).

Regarding her mental health, Johnson was diagnosed with an anxiety disorder and major depressive disorder, recurrent with psychotic features, on August 25, 2006. (Tr. 413-414). Records from Lakes Regional Mental Health and Mental Retardation Center (MHMR) from August 2006 through August 2008 reveal diagnoses of depression and anxiety with a GAF score of 40, decreased motor activity, phobias, delusions, auditory hallucinations, slowed thinking and voice modulation, and fidgeting, with no interest in activities and an inability to concentrate or make decisions. (*See, e.g.*, Tr. 336-414, 493-494, 543-548, 639-655).[4] On June 23, 2008, a consultative psychological consultation was conducted by Dr. Ronald W. Anderson, Ph.D. (Tr. 518-527). Dr. Anderson stated that Johnson was cooperative, but needed "some pushing to put forth her best effort on the exams", and that he felt she was "capable of functioning at a slightly higher intellectual level" than the testing indicated. (Tr. 518). He noted that she should be able to concentrate and learn simple tasks adequately, and that her recent memory was good although her remote memory was poor, and her concentration, insight, and judgment were fair. (Tr. 520-

---

[4] The pages cited consist primarily of checklist-style forms with pre-printed selections made, and little indication as to how or why the choice selected was arrived at.

522).

Analysis:

Johnson was 43 years old on the date of the ALJ hearing, with a tenth-grade education and past relevant work including positions as a nurse's aide, plastics manufacturing worker, substitute janitor, door greeter / cashier, and dishwasher.  (Tr. 21, 27-29, 154, 181).  She was 5'2" tall and weighed 312 pounds on the date of the hearing.  (Tr. 27).  In 2003, Johnson stopped working due to relocation and transportation difficulties.  (Tr. 18, 32-33, 148).

**First**, Johnson argues that the ALJ failed to give adequate weight to treating source opinions.  Specifically, she argues that the ALJ "apparently rejects" the treating opinions of Doctors Reyes-Pescador, Khan, King, Peron, and Minchey.  She cites *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000), for the propositions that the ALJ rejected all of the treating opinions regarding her limitations of osteoarthritis, diabetic neuropathy, and lumbar pain, and that the ALJ was under a duty to recontact Johnson's treating physicians for clarification if he felt their opinions were inadequate.

Plaintiff's reliance on *Newton* is misplaced.  In *Newton*, the Fifth Circuit found that the ALJ stated he did not give a treating physician's opinion "great weight", when in actuality, he gave the opinion no weight at all.  *Newton* at 455.  In the present case, the ALJ acknowledged the opinions of Plaintiffs' treating physicians, and stated his reasons for according less weight to certain medical evidence, primarily the checklist-style forms.  (Tr. 19-20).  His RFC assessment ultimately factored in limitations that were consistent with the medical evidence of record.  (Tr. 17-18).

The ALJ explained his reasons for giving less weight to the RFC assessments that were

8

limited to checklist-style forms, noting that the RFC limitations included in those opinions provided no explanation as to how they were derived. (Tr. 19). Analyzing the checklist-style opinions in conjunction with the other objective medical evidence of record, the ALJ concluded that the evidence as a whole did not support the disability determinations made by some of Plaintiff's treating physicians. The determination that a claimant is unable to work is a legal conclusion reserved exclusively to the Commissioner. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *see also* 20 C.F.R. § 404.1527(e)(1).

The evidence clearly indicates that Johnson suffers from a combination of severe impairments, and the ALJ's findings concerning these impairments and their effects on her RFC are consistent with the evidence of record. (Tr. 17-18). The ALJ considered the opinions of Johnson's treating physicians, and his RFC assessment is reflective of that- for example, he limited her to a modified range of sedentary work[5] with physical restrictions, as well as mental restrictions limiting her to "simple 1, 2, 3 step instructions" and avoiding contact with the public. *Id*. Moreover, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir.2000); *see also Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994). In this case, the ALJ properly exercised his responsibility as fact finder in weighing the evidence and in incorporating limitations into his RFC assessment that were supported by the record. "These are precisely the kinds of determinations that the ALJ is best positioned to make." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

---

[5] While the ALJ's RFC assessment states that Johnson is limited to "light" work, (Tr. 17), the remainder of the ALJ's decision, and his findings regarding potential occupations, reflect a limitation to "sedentary" work. (Tr. 20, 22). The ALJ's error in stating "light" work is further discussed *infra* at pages 12-13.

**Second**, Johnson argues that the ALJ's credibility analysis is not supported by substantial evidence.  She argues that the ALJ's decision contains "misstatements" and "oversimplifications" of her testimony, and that the ALJ should have applied the factors of Social Security Regulation (SSR) 82-59 in reaching his conclusions regarding Johnson's noncompliance with her doctors' recommendations of diet and exercise.  Notwithstanding Plaintiff's argument, there appears to be no requirement to apply SSR 82-59, 1982 WL 31384 (S.S.A. 1982), to her disability claim.  The rule in SSR 82-59 is applicable only in instances where an ALJ finds that a claimant is not disabled due to the claimant's failure to follow a prescribed course of treatment.  In this case, the ALJ found Johnson's obesity to be a severe impairment, and made multiple references to her failure to follow the 1500 calorie diet and daily exercise that her doctors repeatedly advised her to follow.  (Tr. 16, 19, 20).  However, he did not find that Johnson's obesity, alone or in combination with her other impairments, was not disabling because of her failure to follow medical directives.

This was not an "end run" around the regulations, as Plaintiff suggests; (Pl. Br. 17); rather it was the ALJ's opinion that Johnson's obesity was severe, but not severe enough to be disabling, either alone or in combination with her other impairments.  (Tr. 16-17).  The ALJ's opinion is consistent with the objective medical evidence and the subjective testimony of Johnson.  Moreover, a medical condition that can reasonably be remedied with treatment is not disabling.  *See Lovelace, supra,* 813 F.2d at 58.[6]  In this case, the ALJ adequately considered Johnson's obesity in connection with her other severe impairments, and found that despite her

---

[6] In *Lovelace*, the Plaintiff suffered from obesity, hypertension, and arthritis.  *Lovelace,* 813 F.2d at 60.  The Fifth Circuit remanded the case "for an individualized determination of [the Plaintiff's] ability to remedy the ailments that hinder him and his capacity to work when these factors are fully considered".  *Id*.

severe obesity, she would be capable of performing sedentary work with certain restrictions. (Tr. 17-21). He also noted the numerous times her doctors advised her to exercise and adjust her diet, and her complete failure to take any affirmative steps to improve her health. *Id*. Additionally, as mentioned previously, Johnson's obesity was diagnosed as early as 1999, and she continued to work, while obese, until she left her job in 2003 due to a lack of transportation. (Tr. 33, 181).

In assessing Johnson's credibility and determining her RFC, the ALJ considered her complaints of pain and her complaint that she was unable to work "due to swelling of her legs and feet, as well as chronic low back pain, [and] the inability to stand, bend, or crawl"; however, he found that her allegations of pain were not entirely credible based on both the objective medical evidence and Johnson's testimony regarding her activities of daily living. (Tr. 20). Although the medical records document her complaints of pain, they do not support a finding of pain that is disabling, i.e. constant, unremitting, and wholly unresponsive to therapeutic treatment. *See Falco*, 27 F.3d at 163. "It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir., 2001) (citations omitted). In the Fifth Circuit, an ALJ must give reasons for rejecting a claimant's subjective testimony only where the evidence clearly favors the claimant. *Falco*, 27 F.3d at 163. In this case, the ALJ's finding that Johnson's subjective testimony was not entirely credible was supported by substantial evidence in the record.

**Third**, Johnson argues that the ALJ's RFC finding is not supported by substantial evidence. She argues that the ALJ should have adopted the RFC assessments of Dr. Khan and

11

Dr. Reyes, which stated that Johnson had a less-than-sedentary exertional capacity, including limitations on lifting to no more than 5 to 10 pounds occasionally; (Tr. 228, 238-239, 632); restrictions on temperature changes, humidity, and exposure to dust, fumes, and gasses; (Tr. 633); inability to use a keyboard due to radiculopathy; (Tr. 228); and inability to walk more than one hour in an 8-hour day. (Tr. 228). The ALJ stated that he was "aware of the various claimant's physician statements regarding the claimant's residual functional capacity", however, he noted that he was not bound by treating physicians' opinions on whether Johnson was disabled. (Tr. 19). He explained that the RFC restrictions recommended by Johnson's treating physicians were included on checklist-style forms that "did not mention or reference objective medical evidence with which to support their conclusions." *Id*. Moreover, while the forms included diagnoses of morbid obesity and severe osteoarthritis, the ALJ found that the diagnosis of severe osteoarthritis was not supported by the objective medical evidence of record or x-rays. *Id*. The ALJ also noted the diagnosis of diabetic neuropathy and found that it was not a severe impairment based on the medical evidence of record. *Id*.

The ALJ also considered Plaintiff's subjective evidence in reaching his determination, which, as previously discussed, he found was not entirely credible. He took note of the fact that Johnson stated that "her hobby was eating and watching television" during the September 29, 2008 hearing. (Tr. 19, 31, 37). During the hearing, Johnson testified that she took care of her disabled roommate,[7] cooked, cleaned, washed dishes, and did the laundry. (Tr. 19, 29-31, 35).

---

[7] Throughout the ALJ's decision, he refers to Johnson's disabled roommate, Mr. David Mathas, as her "boyfriend". The evidence indicates that Johnson has repeatedly denied that her roommate Mr. Mathas is her boyfriend, (*See, e.g.*, Tr. 34, 39). Webster's dictionary defines "boyfriend" as (1) "a male friend"; or (2) "a frequent or regular male companion in a romantic or sexual relationship". *See* Merriam-Webster's Online Dictionary, available at http://www.merriam-webster.com/dictionary/boyfriend.
   Johnson has been living with her friend Mr. Mathas for approximately 12 years. (Tr. 34).

She wakes up around 6:30 a.m. and goes to bed around 1:00 or 2:00 a.m. (Tr. 29-30). Socially, she takes the bus, goes to church, the doctor, and the grocery store. (Tr. 19, 37, 39).

The ALJ erred in stating that Johnson has the RFC for a modified range of light work, (Tr. 17), then later stating that Johnson is "able to perform a full range of sedentary work." (Tr. 20). However, the representative occupations suggested by the vocational expert and referenced in the ALJ's decision are all in the more restrictive "sedentary" category of occupations. (Tr. 22). While the ALJ committed error in failing to distinguish between "light" and "sedentary" in his decision, Johnson has not shown that she was prejudiced by this error. She has not shown that she would be incapable of performing the sedentary occupations suggested by the vocational expert and incorporated into the ALJ's decision.

This Court will not reverse the decision of an ALJ for error unless the Plaintiff shows that she was prejudiced by the ALJ's error. *See Brock v. Chater*, 84 F.3d 726 (5th Cir.1996); *Kane v. Heckler*, 731 F.2d 1216 (5th Cir.1984). To establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result." *Kane*, 731 F.2d at 1220. In this case, the ALJ's error in stating that Johnson was capable of light work was harmless, as he ultimately recommended sedentary employment, and therefore Johnson was not prejudiced by his mixing of these terms in his decision. *See, e.g.*, *Carey, supra,* 230 F.3d at 142; *see also Bean, supra,* 454 F. Supp. 2d at 621-622.

In determining whether substantial evidence of disability exists, the court weighs four

---

He pays all of the bills for the house that he shares with Johnson and Johnson's 16-year-old daughter. (Tr. 35-37). Mathas pays for his own food, while Johnson pays for the food for herself and her daughter. *Id*. Mathas occasionally gives Johnson's daughter spending money for small items. *Id*. While the ALJ may have been incorrect in calling Mathas a "boyfriend", the Court finds that Johnson was not prejudiced by this error. *See Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000); *see also Bean v. Barnhart*, 454 F. Supp. 2d 616, 621-622 (E.D. Tex. 2006).

13

...
factors: objective medical evidence, diagnoses and opinions, the plaintiff's subjective evidence of pain and disability, and the plaintiff's age, education, and work history. *Perez*, *supra*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991)). On review of the Social Security Commissioner's decision to deny disability benefits, a finding of no "substantial evidence" to support the decision is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698 (5th Cir. 2001). Where the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez*, 415 F.3d at 461. In this case, the ALJ considered the objective medical evidence, summarizing that information and his reasons for according less weight to the opinions of some of Plaintiff's treating physicians that were set forth on checklist-style forms without substantiating treatment records to support their conclusions. (Tr. 17-21). He also considered her subjective testimony, age, education, and work experience. *Id*. His findings are supported by substantial evidence.

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the District Court enter its order AFFIRMING the decision of the Commissioner and its judgment DISMISSING this action with prejudice. A copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 30th day of March, 2010.

*WM. F. Sanderson, Jr.*
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

A copy of this report and recommendation shall be served on all parties in the manner

14

provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.